**Gregory Troy DeGAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 09–94–210 CR, 09–94–211 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Nov. 21, 1995.

Decided June 5, 1996.

Rehearing Overruled June 20, 1996.

Richard Ellis Turkel, Orange, for appellant.

John Kimbrough, County Atty., Gary R. Bonneaux, Asst. County Atty., Orange, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

For purposes of jurisprudential efficiency, these separate appeals will be consolidated by this Court and disposed of in a single opinion. A somewhat detailed rendition of the procedural events surrounding appellant's two convictions is necessary as it appears that certain portions of the two records cannot be utilized by us in reviewing some of appellant's points of error.

The records before us reflect that on September 8, 1988, appellant pleaded guilty to the charge of "Felony Theft" in cause number A880186. The trial court so adjudicated appellant and sentenced him to eight (8) years' confinement in the Texas Department of Criminal Justice—Institutional Division, and fined him $1000. The trial court suspended imposition of said sentence and placed appellant on probation for a term of eight years. One of the terms and conditions of said probation stated: "(a) Commit no offense against the laws of Texas, any other State, the United States or any other governmental entity."

On November 10, 1993, appellant was indicted for the felony offense of Aggravated Kidnapping, cause number A930617. On December 9, 1993, the State filed a motion to revoke appellant's felony theft probation alleging a violation of "Condition (a)" based on the commission of the aggravated kidnapping offense.

Beginning on March 31, 1994, the trial court conducted a hearing on the State's motion to revoke probation. In the weeks preceding this hearing, appellant had filed a variety of prehearing and pretrial motions in each separate case. Several of said motions, however, were virtually identical with regard to the factual and legal issues raised. By agreement of the parties, the trial court used the testimony elicited at the revocation hearing to also decide the merits of certain of appellant's prehearing and pretrial motions. We point this out because, although the subsequent jury trial of the aggravated kidnapping charge [cause number A930617] generated six volumes of statement of facts separate and apart from the two volumes generated from the revocation hearing [cause number A880186], we are limited to considering only the testimony and evidence elicited at the revocation hearing with regard to certain points of error raised in appellant's aggravated kidnapping appeal. We reach this conclusion from a discussion between the parties and the trial court following the voir dire proceeding prior to the start of the aggravated kidnapping trial, with the pertinent portion reproduced as follows:

The Court: ... You filed motion to suppress involving an arrest and a motion to suppress involving a line-up, which in that hearing the court denied both said motions, and the court's ruling from the evidence that I heard—it's my understanding that that would be the same evidence that I would hear in this particular case, and that that evidence could be substituted in this record and that the court's ruling will remain the same as a result of the evidence that I've heard without ya'll having to go through all of that again. Is that correct, State?

[The State]: Yes, Your Honor.

The Court: Is that correct, Mr. [Trial Counsel]?

[Trial Counsel]: Your Honor, it's our impression that that's—

The Court: Not correct?

[Trial Counsel]: No, I'm not saying that, but it's just our impression that that would fall under the adoption of the law of the case, and that case would be applicable here. And so, the only thing that we would ask would be that we not waive any

objections, just a quickly answered question—correct.

The Court: That's all I want is an answer to my question.

[Trial Counsel]: Okay.

The Court: You can do what you want after that answer, or you can make objections. That's up to you.

But the evidence that I heard is the evidence that I would hear if we had a hearing on both motions to suppress, and that evidence is the same evidence which ya'll would present today. So, there's no need to hear it again; right?

[Trial Counsel]: That's the evidence; correct.

The Court: All right. And the court has already stated that evidence could be put in this record and that the court's ruling stands. Both motions are denied.

Now, do ya'll have any other matters for the court to take up?

[Trial Counsel]: Yes, Your Honor. Back to that, because the ruling has been that the evidence would be admissible, we would ask so that we don't bring this up in front of the jury many times, if we could have it understood that we have an objection—or that we would object to the in-court identification when it would be offered and that the court would allow us at this point to have a running objection to that when the trial starts so there would be no need to go through that at the time of trial.

[The State]: Yeah, that's fine with us, Your Honor.

The Court: I didn't think there was a problem. Okay.

[Trial Counsel]: Okay.

The Court: You can do that.

Thereafter, the trial of the aggravated kidnapping offense took place. Appellant was found guilty and punishment was assessed by the jury at eighteen (18) years' confinement in the Texas Department of Criminal Justice—Institutional Division, and a fine of $5000 was also assessed. The trial court then ordered that appellant's eighteen year sentence run consecutively with his eight year sentence in the felony theft conviction.

As is apparent from the portion of the statement of facts quoted above, any consideration by this Court of issues involving rulings on appellant's prehearing and pretrial motions to suppress identification, motions to suppress evidence obtained from an illegal arrest, and motions for continuance, will focus solely on the record generated from the revocation hearing. This encompasses the first three points of error in each of the instant appeals. Their identical wording reads as follows:

Point of Error I: The trial court erred in its denying Appellant's Motion to Suppress Illegal Identification of the Defendant.

Point of Error II: The trial court erred in denying Appellant's Motion to Suppress Evidence Obtained as Result of Illegal Arrest.

Point of Error III: The trial court erred in denying Appellant's Motion for Continuance to secure the presence of a witness crucial to the Defense.

■■■ In considering appellant's first point of error in both of his instant appeals, we observe that the Court of Criminal Appeals has recently reaffirmed its holding that, even assuming an improper pretrial identification procedure has taken place, a subsequent in-court identification is admissible if the witness's ability to identify the defendant has an origin independent from the said improper pretrial procedure. *McFarland v. State*, No. 71,557, slip op. at 29, 34 n. 27, —— S.W.2d ——, ——, —— n. 27 [1996 WL 71513] (Tex.Crim.App. February 21, 1996). *See also Pichon v. State*, 683 S.W.2d 422, 426 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2680, 86 L.Ed.2d 698 (1985). The record before us includes the following testimony elicited from the victim:

Q. [The State]: Ms. [Victim], do you have any independent recollection of the events that occurred on November 2nd, 1993?

A. [Victim]: Yes, sir.

[Appellant's objection overruled].

*[The State]:*

Q. Can you actually remember the face of the person who robbed you at Subway and kidnapped you later on?

A. Yes, sir.

Q. Okay. Do you see that person in the courtroom today?

A. Yes, sir.

[Appellant's objections noted by the trial court].

[The victim then positively identified appellant.]

\* \* \* \* \* \*

[The State]:

Q. Did anyone suggest to you at that time that that was the person who had robbed you and kidnapped you?

A. No, sir.

Q. Did anyone tell you—alert you in a certain direction when he came by?

A. No, sir.

Q. Okay. How did you know that he was the person that had robbed you and kidnapped you?

A. Because I didn't forget his face. I knew his face.

The victim's testimony also included the fact that she observed appellant walking back and forth in front of her store "three or four times," that she got a "good look" at appellant because the entire area was well lighted, and that the entire incident ["from the time he came in and threatened to rob you until the time that you were able to break away from him"] lasted for about twenty minutes. The record clearly indicates that the victim's in-court identification had its origin independent of any allegedly improper pretrial identification procedure. As such, appellant's due process rights were not violated.[1] Point of error one in both causes are overruled.

In both of appellant's second points of error he argues that appellant's arrest was "accomplished without warrant, or probable cause and as such was in violation of the 4th and 14th amendments to the United States

Constitution, Article I Section 9 of the Texas Constitution and Articles 38.22 and 38.23 of the Texas Code of Criminal Procedure." Again, appellant fails to discuss separately the specific applicability of article I, section 9 or art. 38.22. Those issues will not be addressed as they have been inadequately briefed. See footnote 1, supra.

■■■ At a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight of their testimony. Banda v. State, 890 S.W.2d 42, 51 (Tex.Crim. App.1994), cert. denied, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). The reviewing court does not engage in its own factual review, and so long as the record supports the trial court's findings, the reviewing court is not at liberty to disturb them. Id. at 51–52. On appellate review, the court considers only the question of whether the trial court improperly applied the law to the facts. Id. at 52. The Court of Criminal Appeals has recently clarified the issue of appellate review of a trial court's probable cause determination in DuBose v. State, 915 S.W.2d 493, 497–498 (Tex.Crim. App.1996), with the following language:

When the courts of appeals analyze a trial court's denial of a motion to suppress evidence they must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. They should reverse the trial court's decision only for an abuse of discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.

---

1. Other than the denial of due process, appellant makes no attempt to specifically set out how "his rights under the 6th and 14th amendments to the United States Constitution, Article I Section 10 of the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure" and "his rights under the 5th and 14th amendments to the United States Constitution, Article I Section 19 of

the Texas Constitution, and Article 1.04 of the Texas Code of Criminal Procedure" were violated. This represents inadequate briefing of the constitutional and statutory provisions cited. Tex.R.App. P. 74(f). See also Turner v. State, 886 S.W.2d 859 (Tex.App.—Beaumont 1994, pet. ref'd). We limit the scope of our holding to appellant's "due process" argument.

■■ In the context of an arrest, an officer acting with probable cause to arrest may do so without a warrant and not violate the Fourth Amendment. *United States v. Watson,* 423 U.S. 411, 415–417, 96 S.Ct. 820, 823–25, 46 L.Ed.2d 598, 604–605 (1976). In the instant case, we have no written or verbal explanation of the legal standard used by the trial court in denying appellant's suppression motion. The correct legal standard for determining probable cause for a warrantless arrest is where, at the moment of arrest, the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890 (1949). *See also Hughes v. State,* 878 S.W.2d 142, 154 (Tex.Crim.App.1993)(opinion on rehearing), *cert. denied,* ―― U.S. ――, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994); *Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App.1991).

■ At the time appellant was arrested, the arresting officers were presented with the following factual scenario:

1. An aggravated robbery had just been reported at the Subway sandwich shop located at the nearby Northway Shopping Center.

2. As the officers proceeded to the location of the robbery, they observed a man, later identified as the appellant, run up the street and right in front of the patrol vehicle.

3. As the officers were observing appellant run past their patrol unit, the police dispatcher relayed a clothing description of the robbery suspect. Said description, "a black male wearing a gray sweater and dark pants" matched that of appellant.

4. As appellant ran up to the driveway of a private residence, the officers pulled directly into the driveway and ordered appellant to halt.

5. Appellant was directed to place his hands on the patrol unit and as this took place the officer was given confirmation by the dispatcher that appellant matched the exact height and weight of the robbery suspect. It was at that point that appellant was placed under arrest.

Included in the arresting officer's testimony was his opinion that appellant was about to escape at the time of the arrest as well as his opinion that under the circumstances there was no time to secure an arrest warrant for appellant. Applying the facts present in the record before us to the correct legal standard applicable to warrantless arrests we find no abuse of discretion by the trial court in denying appellant's motion to suppress evidence obtained from the allegedly illegal arrest. Clearly, at the time of appellant's arrest, facts and circumstances within the officer's knowledge had ripened into probable cause. Both of appellant's second points of error are overruled.

Appellant's third points of error complain of the trial court's denial of appellant's motion for continuance so as to locate a missing defense witness. The record reflects that in cause number A930617, appellant filed his first motion for continuance on December 29, 1993, because of lack of sufficient time for trial counsel to have prepared for the case. This motion was granted by the trial court on January 7, 1994. Appellant filed a second motion for continuance in cause number A930617 on February 3, 1994, alleging the need for more time so as to locate the missing witness, "Mr. Crouse" (sic). The trial court granted this second motion for continuance on February 17, 1994. The trial in cause number A930617 was apparently reset for April 11, 1994.

The record in cause number A880186 reflects an initial motion for continuance filed by appellant on January 10, 1994, raising the need to locate the missing defense witness, "Mr. Crouse" (sic). The trial court granted said motion on January 11, 1994, and apparently reset the revocation hearing to March 31, 1994. On March 30, 1994, appellant filed his second motion for continuance, alleging the missing defense witness, [Kraus] was still missing but adding "the Defendant, through the efforts of his investigator, believes he [Kraus] is probably in or near Kentucky." The motion went on to allege that a forwarding address from Kraus's last known address

in Lytle, Texas might be available from the Lytle, Texas post office through the efforts of the State's investigator.

At the March 31, 1994 hearing, the State's investigator, Mark Ellis, testified that a request for Kraus's forwarding address was mailed that day to the Lytle, Texas post office. Questions by the State to Ellis produced the following testimony:

Q. [The State] What is the likelihood of finding Mr. Kraus once you—do you feel like it's likely in the next two weeks?

A. [Ellis] I have no idea. If they return a new address for him, then certainly we could attempt to contact him there, and how recent that is, I don't know. We won't know until we hear back from Littel (sic).

Q. Have you had investigators from other counties assist you in trying to locate Mr. Kraus?

A. Yes, sir. Originally, several months back when this first came up, you asked me to get with Littel (sic) and see if he could be located there. I contacted someone—it would be indicated, I believe, in the notes I gave back to you—whether it was a D.A. investigator or—it was some law enforcement officer there in Littel (sic)—and asked him to check all resources to see if they could locate the subject there, and they responded that they did find his previous address, as was listed on his—I think it was on his driver's license, but that they couldn't locate the subject.

The evidence was concluded and the trial court made the following ruling:

The Court: The court would like for the record to reflect that this is not the first time that this matter has come up on a motion for continuance, and the court's file will speak for itself.

Motion for continuance is denied.

The record indeed reflects that as early as January 10, 1994, appellant was aware of the need for Kraus and that he was missing. The January 10 motion for continuance was granted as was the February 3, 1994, motion for continuance in A930617. TEX.CODE CRIM. PROC. ANN. arts. 29.06 & 29.07 (Vernon 1989), provide the operative law on this issue. Arti-

cle 29.07 specifically addresses subsequent motions for continuance by a defendant and provides:

Subsequent motions for continuance on the part of the defendant shall, in addition to the requisites in the preceding Article, state also:

1. That the testimony cannot be procured from any other source known to the defendant; and

2. That the defendant has reasonable expectation of procuring the same at the next term of the court.

■ In the instant case, the record reflects, with regard to cause A930617, no subsequent motion for continuance was filed following the trial court's granting of appellant's February 3, 1994 motion. TEX.R.APP. P. 52(a) requires a timely request, objection, or motion be made to the trial court and ruled on in order to preserve a complaint for appellate review. Since no further motion was filed in cause number A930617 resulting in an adverse ruling by the trial court nothing is presented to us for review. The trial court had given appellant all the relief he had requested. Point of error three in NO. 09–94–211 CR is overruled.

■ As for the issue in cause number A880186, the fact that appellant's March 30, 1994, motion did not contain the two additional allegations listed in art. 29.07 has been held to be fatal to an appellate complaint of the denial of such motions. *See Renfroe v. State*, 145 Tex.Crim. 363, 167 S.W.2d 772, 773 (1942)(opinion on rehearing); *Perkins v. State*, 120 Tex.Crim. 399, 46 S.W.2d 672, 675 (1931). Both averments are missing from appellant's motion for continuance of March 30, 1994.

■ Additionally, the record reflects a lack of proof of a reasonable probability that Kraus could be located by any further postponement of the proceedings. The testimony of Investigator Ellis was only hopeful at best as to the probability of locating Kraus through the efforts undertaken up to that time. Interestingly, the record before us is silent as to any events that may have transpired with regard to locating Kraus from the date of the revocation hearing [March 31,

1994], up to and through the date of the trial of the aggravated kidnapping charge [April 11, 1994]. We simply cannot say, therefore, that the trial court abused its discretion in denying appellant's subsequent motion for continuance. *See Salinas v. State,* 542 S.W.2d 864, 866 (Tex.Crim.App.1976); *Branch v. State,* 774 S.W.2d 781, 787 (Tex. App.—El Paso 1989, pet. ref'd). Point of error three in NO. 09–94–210 CR is overruled.

■ In NO. 09–94–211 CR, point of error four states:

> The trial court erred in granting State's motion in Limine denying Appellant the right to "mention about what John Crouse, or any other witness, might have testified to if they were available," and in preventing Appellant's attorney, at trial, from inquiring into the actions and statements of said absent witness.

In light of the record before us, we view appellant's salient argument under this point of error to be contained in the following sentence taken from his brief: "At trial the defense was prejudiced because it could not counter prejudicial testimony at the moment it was presented." We so restrict our focus because the record clearly reflects that a written statement given to the police by Kraus was read to the jury without objection by the State apparently in clear violation of the motion in limine.[2] It appears, therefore, that appellant was indeed able to have his defensive theory of mistaken identity placed before the jury. Appellant provides no authority to support his contention that because he was not permitted to "counter prejudicial testimony at the moment it was presented" with the use of Kraus's written statement he was harmed in some manner. We reiterate that the record reflects that appellant was permitted to disregard the State's motion in limine concerning the out-of-court statement of Kraus. Once the cat was out of the bag,

nothing prevented appellant from recalling any of the previous State's witnesses and utilizing Kraus's statement during questioning. No error exists in the record before us.[3] Point of error four in NO. 09–94–211 CR is overruled.

■ Our review of appellant's two appeals continues in tandem with the following points of error:

> Point of Error IV [NO. 09–94–210 CR]: The trial court erred in overruling Appellant's Motion for Rehearing in that the evidence is insufficient to support the Appellant's Revocation of Probation because of overwhelming evidence that Appellant did not commit the alleged offense for which his probation was revoked.
>
> Point of Error V [NO. 09–94–211 CR]: The trial court erred in overruling Appellant's Motion for New Trial in that the evidence is insufficient to support the Jury's finding of guilt because of overwhelming evidence that Appellant did not commit the alleged offense.

Although designated as a "Motion for Rehearing" in cause number A880186, we will treat said motion as a motion for new trial. *See* TEX.R.APP. P. 30(a). Although somewhat confused by the wording of the points of error themselves, we find that, in each appeal, appellant is essentially complaining that the "verdict is contrary to the law and evidence." TEX.R.APP. P. 30(b)(9). Such a contention has been held to be a challenge to the sufficiency of the evidence to sustain the conviction. *State v. Davenport,* 866 S.W.2d 767, 770 (Tex.App.—San Antonio 1993, no pet.); *State v. Charlton,* 847 S.W.2d 443, 444 (Tex.App.—Houston [1st Dist.] 1993, no pet.). As pointed out in footnote 2 *supra,* the record in NO. 09–94–211 CR contains none of the exhibits introduced into evidence during appellant's trial. An examination of the record in NO. 09–94–210 CR also indicates a

---

**2.** We are somewhat mystified as to why the State permitted appellant's trial counsel to have the State's witness read from Kraus's written statement. Apparently this instrument was not introduced into evidence. However, as no exhibits are contained in the statement of facts before us, we cannot be entirely sure of this observation.

**3.** For a shorthand discussion of the proper approach to preserving at trial and complaining on appeal of motion in limine issues, *see Draughon v. State,* 831 S.W.2d 331, 333, n. 1 (Tex.Crim. App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); and *Nunfio v. State,* 808 S.W.2d 482, 484, n. 1 (Tex.Crim.App. 1991).

complete lack of exhibits introduced for the trial court's consideration.

In *Greenwood v. State*, 823 S.W.2d 660 (Tex.Crim.App.1992), the Court of Criminal Appeals held that the entire statement of facts was essential for an appellate court to review a sufficiency of the evidence claim. The Court provided the following rationale for said holding:

> In its sufficiency review, a reviewing court bears the responsibility of reviewing the entire record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] This constitutional mandate is predicated upon the ability of the reviewing court to consider all the relevant evidence in a given case. The presentation of only a partial record makes such a consideration impossible. Because the reviewing court must consider all relevant record evidence and Rule 50(d) requires that the complaining party present sufficient portions of the record to demonstrate error of a reversible nature, the entire record of the trial before the fact finder is necessary to show error when an appellant raises a sufficiency point of error. [*O'Neal v. State*, 811 S.W.2d 219, 221 (Tex.App.— Dallas 1991), *aff'd*, 826 S.W.2d 172 (Tex. Crim.App.1992)]
>
> . . . .
>
> We hold that without an agreed or complete statement of facts, an appellate court cannot consider the "facts" of the case to determine whether or not sufficient evidence exists to support the conviction.

*Id.* at 661.

In none of his written designations of evidence on appeal filed with the court reporter[4] did appellant request the physical items of evidence introduced during either the revocation hearing or the trial. In *Lovely v. State*, 894 S.W.2d 99, 101 (Tex.App.—Beau-

mont 1995, pet. ref'd), we held that appellant's failure to include, in the appellate record, a videotape introduced at trial and shown to the jury waived any review of his insufficient evidence complaint. The instant points of error suffer from the identical infirmity. Point of error four [NO. 09–94–210 CR] and point of error five [NO. 09–94–211 CR] are overruled.

 Appellant's final two points of error pose the following:

Point of Error V [NO. 09–94–210 CR]: The trial court erred in overruling Appellant's Motion for Rehearing based on newly discovered evidence in that the newly discovered evidence was unknown to the Appellant at the time of his hearing, his failure to discover the evidence was not due to his lack of diligence, the evidence, if introduced at a new hearing would bring about a different result, and was admissible, and not merely cumulative, corroborative, collateral, or impeaching.

Point of Error VI [NO. 09–94–211 CR]: The trial court erred in overruling Appellant's Motion for New Trial based on newly discovered evidence in that the newly discovered evidence was unknown to the Appellant at the time of his trial, his failure to discover the evidence was not due to his lack of diligence, the evidence, if introduced at a new trail (sic) would bring about a different result, and was admissible, and not merely cumulative, corroborative, collateral, or impeaching.

We have recently held in *Mathews v. State*, 918 S.W.2d 666, 668 (Tex.App.—Beaumont 1996, pet. filed), that a motion for new trial which is either unverified or not supported by affidavits in support thereof is insufficient as a pleading, and therefore a trial court does not err in denying said motion without an evidentiary hearing. As has been pointed out to practitioners, to avoid "fishing expeditions," the motion for new trial should be supported by an affidavit showing the truth of the grounds of attack, *Reyes v. State*, 849

---

4. Appellant did include a request for "original exhibits" in his designation of the transcript filed only with the clerk of the trial court. Trial exhibits are part of the statement of facts and it is the court reporter who has the duty to file

them with this Court, *see* Tex.R.App. P. 11, upon a proper request from appellant. Tex.R.App. P. 53(a). *See also Zule v. State*, 820 S.W.2d 801, n. 1 (Tex.Crim.App.1991); *Webb v. State*, 760 S.W.2d 263, 276, n. 19 (Tex.Crim.App.1988).

S.W.2d 812, 816 (Tex.Crim.App.1993); *McIntire v. State,* 698 S.W.2d 652, 658 (Tex.Crim.App.1985), particularly where the matters alleged are not determined from the record. *Id.; Davenport,* 866 S.W.2d at 772. In the instant case, neither sets of motions for new trial/rehearing are supported by affidavits. Appellant attempts to remedy this problem by referring to an affidavit contained in a motion to abate proceedings filed with this Court on September 6, 1994. We denied said motion on September 22, 1994. It is certainly improper for appellant to contend error by the trial court in overruling a clearly insufficient motion for new trial and attempt to cure the insufficiency by providing the missing documentation for the first time on appeal. The trial judge ruled on what he had before him. There was no abuse of discretion. Point of error five [NO. 09–94–210 CR] and point of error six [NO. 09–94–211 CR] are overruled. The judgments and sentences of the trial court are affirmed in both causes.

AFFIRMED.